1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

JAMES WILLIAMS,

Case No. 2:14-cv-00414-APG-PAL

8

Plaintiff,

**ORDER AND**
**REPORT OF FINDINGS AND**
**RECOMMENDATION**

9

v.

F.N.U. CLARK, et al.,

10

Defendants.

(Mtn File Am. Compl. – Dkt. #31)
(Mtn Ext. Time re: Service – Dkt. #42)
(Mtn Add Party – Dkt. #50)
(Mtn to Am. Compl. – Dkt. #51)

11
12

13        Before the Court is Plaintiff James Williams' Motion for Leave to File Amended

14    Complaint (Dkt. #31); Motion to Extend Time re: Service (Dkt. #42); Motion to Add Party: Las

15    Vegas Metropolitan Police Department (Dkt. #50); and Motion to Amend/Correct Complaint and

16    Add/Join Parties (Dkt. #51).  The Court has also considered Defendants' Responses (Dkt. ##34,

17    47, 54).   This matter was referred to the undersigned to issue a Report of Findings and

18    Recommendation pursuant to 28 U.S.C. § 636(a)–(b) and Local Rules LR IB 1-3 and 1-4.

19    **I.    PROCEDURAL HISTORY**

20        Plaintiff is proceeding in this case *pro se* and *in forma pauperis*.  Pursuant to 28 U.S.C.

21    § 1915, the Court screened Plaintiff's Complaint (Dkt. #1-1), which he submitted on March 20,

22    2014, while he was then incarcerated by the Nevada Department of Prisons.[1]  *See* Screening

23    Order (Dkt. #9), entered Nov. 17, 2014.  The Court found the Complaint stated a claim under the

24    Fourth Amendment for an unreasonable seizure of Plaintiff's personal property against

25    Defendants Firestine, LaVassieur, Fincher, Le Heay, Kompman, Johnson, Jane Doe, John Does

26    ##1, 2, 6, and 7, and Sgt. John Doe.  The Court dismissed all of Plaintiff's other claims and

27

---

[1]   Plaintiff recently filed a Notice of Change of Address (Dkt. #55) indicating that he is no longer
28    incarcerated.

defendants with leave to amend.[2]  Plaintiff did not file an amended complaint by December 17, 2014, as ordered.  Therefore, the Court directed the Clerk of the Court to file Plaintiff's Complaint (Dkt. #11) and issue summons to the Defendants named in his claim for unreasonable seizure under the Fourth Amendment.  *See* Order (Dkt. #10).  The summons were returned executed for Defendant Officers Firestine and LaVassieur, (Dkt. ##17, 18), but not for Defendant Officers Kompman, Le Heay, Fincher, or Johnson, (Dkt. ##19, 20, 21, 22).

On May 18, 2015, this Court denied Plaintiff's Motion to Serve Additional Interrogatories, but granted his Motion to Amend / Correct Scheduling Order (Dkt. #43):

> The deadlines stated in the Scheduling Order (Dkt. #32) are extended forty-five (45) days: (1) Discovery in this action shall be completed on or before July 20, 2015; (2) Motions for summary judgment shall be filed and served no later than August 18, 2015; and (3) the Parties shall file a Joint Pretrial Order on or before September 18, 2015.

*See* Order (Dkt. #53) at 2–3.  The Court also granted Defendants' Motion to Take Deposition (Dkt. #49) of Plaintiff.  *See* Order (Dkt. #52).

## II.    PLAINTIFF'S MULTIPLE REQUESTS FOR LEAVE TO AMEND HIS COMPLAINT

Plaintiff has now filed multiple motions seeking to amend his Complaint to add additional defendants and claims.  *See* (Dkt. ##31, 42, 50, 51).[3]  Plaintiff's Motion for Leave to

---

[2]  Specifically, the Court dismissed the following claims and defendants: (1) interference with commerce under 18 U.S.C. § 1951; (2) Fourth Amendment violation regarding a strip search; (3) Fourth Amendment violation regarding a false arrest; (4) violation of 42 U.S.C. § 1983 against municipal defendant, Las Vegas Metropolitan Police Department, its police officers, and Defendant Doug Gillespie; (5) violation of procedural due process related to personal property; (6) Fourth Amendment violation regarding an unreasonable seizure; (7) First Amendment violation; (8) Eighth Amendment violation regarding excessive bail; (9) violation of 42 U.S.C. § 1983 against private actors, Stephen Turner and Doe Security Guards ##1 and 2; and (10) violations of state law.

[3]  Making repeated requests for the same relief is an abusive litigation tactic that taxes the resources of the court and all of the parties to this lawsuit.  Rule 11 of the Federal Rules of Civil Procedure provides that sanctions may be imposed on an unrepresented party who signs a paper that is either filed with the court for an improper purpose or is frivolous.  *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (citing *Townsend v. Holman Consulting Corp.*, 929 F.3d 1358. 1362 (9th Cir. 1990) (en banc)).  In *Nugget*, the Ninth Circuit upheld the district court's imposition of Rule 11 sanctions because a party's second motion to compel largely duplicated the first.  *Id.*  Once a motion is filed, filing a duplicate motion will not speed up the court's review of a plaintiff's request because motions are generally addressed in the order which they were filed.  To the contrary, filing duplicate motions increases the Court's workload, and generally delays decision while a new round of responses

- 2 -

1   File Amended Complaint (Dkt. #31), filed March 3, 2015, asks the Court to screen and file a

2   127-page amended complaint attached to his Motion for Leave to File Amended Complaint (Dkt.

3   #4), which he filed in June 2014.  The Court denied that motion when it screened the initial

4   Complaint because the proposed amendment was excessively long, needlessly repetitive, and did

5   not comply with Rule 8 of the Federal Rules of Civil Procedure.  *See* Screening Order (Dkt. #9)

6   at 2.  Thus, the Motion for Leave to File Amended Complaint (Dkt. #31) is duplicative and the

7   Court will deny it for the same reasons previously stated.

8        In Plaintiff's Motion to Amend/Correct Complaint and Add/Join Parties (Dkt. #51), he

9   asks the Court for leave to file a 59-page amended complaint ("Proposed Amended Complaint")

10  attached thereto.  The Proposed Amended Complaint seeks to name 25 defendants.  Plaintiff's

11  allegations arise from incidents beginning in May 2009 to the present and attempt to state claims

12  for the Defendants' conspiracy to violate his civil rights under the Privileges or Immunities

13  Clause and the First, Fourth, Eighth, Fourteenth Amendments.  He alleges that Defendants

14  violated federal statutes regarding anti-trust and trade, 15 U.S.C. §§ 1, 2, 15; civil rights, 42

15  U.S.C. §§ 1983, 1985(3); and anti-racketeering and bribery of public officials, 18 U.S.C. §§ 201,

16  1951, 1961–68.  He also alleges violations of Nevada's Constitution, Art. 1, § 1; and criminal

17  statutes, NRS 200.310 (kidnapping), NRS 200.380 (robbery), NRS 200.400 (battery with intent

18  to commit a crime); NRS 200.460 (false imprisonment); NRS 207.295 (commercial bribery).

19  The Court will first describe the revised allegations in the Proposed Amended Complaint and

20  then analyze whether leave to amend is warranted.

21       **A.      Factual Allegations in the Proposed Amended Complaint**

22       Plaintiff alleges that on 22 occasions from May 2009 through August 2013, Defendants

23  violated his civil rights, as well as state and federal law, by conspiring to interfere and interfering

24  with commerce, namely Plaintiff's business of selling and/or "accepting donations" for bottled

25  water and other merchandise.  *See* Proposed Am. Compl.[4]  Plaintiff alleges that, prior to May

26
27  and reply deadlines run.  Plaintiff is warned that continued motion practice requesting relief that has
    already been denied or making frivolous, unsupported requests may result in the imposition of sanctions.

28  [4]  Plaintiff identifies the following dates for each of his 29 counts: Counts I–III (before May 2009);
    Counts IV (May 2009 – Aug. 11, 2013); Counts IV–V (May 2009 – present); Count VI (Nov. 19, 2010);

2009, local government officials, including Clark County Commissioner, Steve Sisolak; former Las Vegas Metropolitan Police Department ("LVMPD") Sheriff, Doug Gillespie; former Clark County District Attorney, David Roger; and current Clark County District Attorney, Steve Wolfson, conspired to aid and abet the casinos located on the Las Vegas Strip in obtaining a monopoly over the sale of bottled water and other merchandise outside of those casinos. *Id*. at Counts I–III; *see also* Count V (alleging the same against Deputy District Attorneys Jane/John Does 1–100 from May 2009 to the present). In doing so, those government officials purportedly interfered with commerce and deprived the Plaintiff and "other citizens who engage in similar activity" of equal protection under the law. Plaintiff asserts that the government officials engaged in a "pattern of racketeering activity" by ordering their subordinates to "cite, detain, arrest, initiate criminal prosecutions against and take money and property" from people such as Plaintiff by "enforcing statutes and codes that are preempted" by federal law. According to Plaintiff, the government officials accepted campaign donations and salaries as Clark County employees as consideration for violating their duty to uphold the law.

Plaintiff further contends that on multiple occasions between May 2009 and August 2013, various LVMPD Officers or Doe Officers 1–150 falsely cited, detained, arrested, or kidnapped him while he was selling and/or accepting donations for water bottles on the Las Vegas Strip. *Id.* at Counts IV–IXXX. The LVMPD Officers were enforcing statutes that are allegedly preempted by state and federal law; thus, they violated his civil rights "under the color of official right" by impounding his property, including coolers, money, dollies, and water bottles. *Id*.

In addition, he alleges that LVMPD Officers violated his First Amendment right to assemble peaceably on multiple occasions when they arrested Plaintiff for obstructing the

---

Count VII (June 5, 2011); Count VIII (Mar. 30, 2012); Count IX (Apr. 17, 2012); Count X-XI (Apr. 20, 2012); Count XII (May 9, 2012); Count XIII (May 25, 2012); Count XIV (Oct. 14, 2012); Count XV (Mar. 28, 2013); Count XVI (Apr. 3, 2013); Count XVII (Apr. 24, 2013);Count XVIII (Apr. 27, 2013); Count IXX (May 4, 2013);Count XX (May 8, 2013); Count XXI (May 12, 2013);Count XXII (May 15, 2013); Count XXIII (June 2, 2013);Count XXIV (June 8, 2013); Count XXV (June 16, 2013); Count XXVI (July 7, 2013); Count XXVII (July 27, 2013); Count XXVIII (Aug. 11, 2013); and Count IXXX (May 2009 – present).

1  sidewalk.  *See, e.g.*, *id*. at Count XXIII.  Plaintiff alleges his Eighth Amendment rights were

2  violated on May 15, 2013, when Defendants increased a criminal charge against him from a

3  misdemeanor to a gross misdemeanor "resulting in Plaintiff's bail being doubled and depleting

4  his resources, by forcing him to bail out on the excessive bail."  *Id*. at Count XXII.  After he was

5  arrested on July 7, 2013, he was taken to Clark County Detention Center, where he was strip

6  searched for illegal drugs even though he alleges there was no reasonable suspicion to believe he

7  possessed drugs.  *Id*. at Count XXVI.

8       Plaintiff alleges that when he tried to prevent a false arrest on October 14, 2012, Doe

9  Officers 1–150 used "an unreasonable amount of force" by tackling him down two staircases

10  before arresting him.[5]  *Id*. at Count XIV.  He also alleges that on April 27, 2013, Defendant

11  Stephen Turner and Doe Security Officer Defendants 1–150 assaulted him by choking and

12  handcuffing him, kicking him to the ground while still handcuffed, refusing to let him stand up,

13  keeping him in 95 degree heat for over an hour, refusing to provide him with water, and

14  ramming his head against the "Twin Peaks window."[6]  *Id*. at Count XVIII.  Finally, Plaintiff

15  alleges that on July 27, 2013, LVMPD Officers, Firestine, and LaVassieur assaulted and battered

16  Plaintiff by punching him numerous times, tackling him, and putting him in a chokehold.[7]  *Id*. at

17  Count XXVII.

18

19

---

20  [5]  In the original Complaint, Plaintiff included a conclusory allegation that John Does #6 and #7 "chased

21  and tackled him" on October 14, 2012, and he asserted that this conduct violated 18 U.S.C. § 1951.  *Compare* Proposed Am. Compl. at Count XIV *with* Compl. (Dkt. #11) at Count XV.  Plaintiff's proposed

22  amendment provides additional facts, although he still uses a form of doe pleading to allege that Doe Officers 1–150 violated his civil rights and federal and state law with this conduct.

23  [6]  These allegations are substantially the same as those in the original Complaint against Mr. Turner,

24  Security Officer #1, and Security Officer #2; although he now alleges that Mr. Turner and Security Does 1–150 violated his civil rights and federal and state law with this conduct.  *Compare* Proposed Am.

25  Compl. at Count XVIII *with* Compl. (Dkt. #11) at Count XI.  The original Complaint alleged a violation of 18 U.S.C. § 1951 for that particular date and conduct.

26  [7]  In the original Complaint, Plaintiff included a conclusory allegation that LVMPD Officers Firestine and

27  LaVassieur assaulted him on July 27, 2013, and he asserted that this conduct violated 18 U.S.C. § 1951.  *Compare* Proposed Am. Compl. at Count XVII *with* Compl. (Dkt. #11) at Count II.  Plaintiff's proposed

28  amendment provides more detail and alleges that the conduct amounts to violations of his civil rights, federal, and state law.

**B.     Legal Standards for Granting Leave to Amend the Complaint**

**1.     <u>Rule 15 of the Federal Rules of Civil Procedure</u>**

After the time for amendment as a matter of course has expired, a party may amend its complaint only by leave of the court or by the adverse party's written consent.  Fed. R. Civ. P. 15(a)(2).  The court has discretion to grant leave and should freely do so "when justice so requires."  *Id.*; *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  Nevertheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).  In exercising its discretion, "a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities."  *DCD Program, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotation omitted).

A proposed amendment is futile if no set of facts can be proved under the amendment that would constitute a valid claim or defense.  *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 845 (9th Cir. 2014) (affirming district court's finding that amendment could not cure the deficient pleading even though plaintiffs had not previously received leave to amend).  Futility alone can justify the denial of a motion for leave to amend.  *Nunes v. Ashcroft*, 375 F.3d 805 (9th Cir. 2004).  "Where no colorable grounds exist to support a claim or defense, a motion to amend would be futile."  *Hines v. City of Albany*, 542 F. Supp. 2d 218, 224 (N.D.N.Y. 2008).  A proposed amendment to a complaint that merely restates and seeks to reinstate claims that already have been dismissed may be properly denied as futile.  *Ross v. City of Waukegan*, 5 F.3d 1084, 1088 (7th Cir. 1993); *cf. Telesaurus VPC, LLC, v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (affirming denial of leave to amend where plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies).

**2.     <u>Screening an Amended Complaint Pursuant to 28 U.S.C. § 1915</u>**

In addition to the mandates of Rule 15, federal courts must screen *in forma pauperis* complaints and amended complaints pursuant to 28 U.S.C. § 1915 to identify any valid claims

and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); *see also* 42 U.S.C. § 1997e (Prison Litigation Reform Act of 1995).  In determining whether *in forma pauperis* complaint is frivolous warranting dismissal, a court is not bound as it usually is when making a determination based solely on pleadings, to accept without question truth of plaintiff's allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).  A court may therefore dismiss all or part of *in forma pauperis* complaint if the plaintiff's claims lack an arguable basis either in law or in fact.  *Id.*  This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims for violation of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios).  *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted and the court applies the same standard under § 1915A when reviewing the adequacy of a complaint or an amended complaint.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *Chappel v. Laboratory Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  For the purposes of § 1915's screening requirement, a properly pled complaint must therefore provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Mere recitals of the elements of a cause of action supported only by conclusory allegations do not suffice.  *Id.* at 679–80.  A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Where the claims in the complaint have not crossed the line from plausible to conceivable, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.

1    Allegations in a *pro se* complaint are held to less stringent standards than formal pleading

2    drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338,

3    342 n.7 (9th Cir. 2010) (joining five other circuits finding that liberal construction of *pro se*

4    pleadings is still required after *Twombly* and *Iqbal*).  However, *pro se* litigants must still abide by

5    the Federal Rules of Civil Procedure.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986).

6    ### C.    Analysis of Plaintiff's Proposed Amended Complaint

7    Like his original Complaint, Plaintiff's proposed amendment focuses on the Defendants'

8    alleged violations of his Constitutional rights.[8]  However, before analyzing whether the Proposed

9    Amended Complaint states valid claims, the Court will address three legal barriers that render

10    most of the proposed amended claims futile.

11    ### 1.    Statute of Limitations

12    As a preliminary matter, the Court finds that several counts alleged in Plaintiff's

13    Complaint are time-barred.  Thus, amendment would be futile.  42 U.S.C. § 1983 provides a

14    mechanism for the private enforcement of substantive rights conferred by the Constitution and

15    federal statutes.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  Although § 1983 does not

16    provide a specific statute of limitation, 42 U.S.C. § 1988 states that where federal law does not

17    provide a statute of limitations, state law applies.  The Supreme Court has also held that in the

18    interest of national uniformity and predictability, all § 1983 claims shall be treated as tort claims

19    for the recovery of personal injuries.  *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985).  In

20    Nevada, the personal injury statute of limitations is two years.  *See* NRS 11.190(4)(e).

21    Here, Plaintiff alleges that the wrongful government conduct began in 2009—six years

22    ago.  Plaintiff initiated this suit on March 20, 2014; thus, any claim Plaintiff is attempting to

---

24    [8]    Neither Plaintiff's Complaint nor the Proposed Amended Complaint allege whether the criminal

25    charges and proceedings described are still pending or are now resolved, *i.e.* whether prosecutors dismissed the charges, he was convicted after trial, or he pled guilty and was sentenced.  To the extent Plaintiff's claims challenge the constitutionality of a state conviction or sentence, his claims are barred by

26    *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court held that a state prisoner's civil rights action is barred if success in that action would necessarily demonstrate the

27    invalidity of his conviction or sentence—no matter the relief sought or the target of the plaintiff's suit. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir.

28    1996).

bring under § 1983 for conduct prior to March 20, 2012, is time-barred. As such, granting leave to amend for conduct occurring before March 20, 2012, would be futile. According to Plaintiff, the relevant time period for Counts I to III is "before May 2009," therefore, these counts are time-barred in their entirety. *See* Proposed Am. Compl. at 1. Additionally, Counts VI and VII are wholly time-barred as they allege conduct occurring on November 19, 2010, and June 5, 2011, respectively. Numerous counts are partially time-barred to the extent they allege conduct occurring before March 20, 2012: Counts IV (May 2009 – August 11, 2013); Counts V (May 2009 – present); and Count IXXX (May 2009 – present). As a result, the Court will recommend leave to amend be denied for Counts I–III, VI, and VII, and denied in part for Counts IV, V, and IXXX to the extent that such claims seek relief for conduct prior to March 20, 2012.

## 2. Repetition of Invalid and Implausible Claims

After reviewing Plaintiff's proposed amendment, the Court finds that a number of the proposed amended claims did not cure the pleading deficiencies identified in the Screening Order (Dkt. #9). The Proposed Amended Complaint recycles the same conclusory allegations that the Court informed him were insufficient as a matter of law. *Id.* at 4–12. For the same reasons stated in the Screening Order, the following theories still fail to state a claim upon which relief may be granted: (1) First Amendment; (2) Fourth Amendment (strip search); (3) Fourteenth Amendment (procedural due process); (4) Eighth Amendment (excessive bail); (5) tort claims under Nevada law (assault, battery, and false imprisonment); (6) claim under 18 U.S.C. § 1951; claims under 42 U.S.C. § 1983 against (7) private actors, Defendants Steven Turner and Doe Security Guards #1 and #2, as well as (8) LVMPD, its officers, and former sheriff Doug Gillespie pursuant to *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978) (*Monell* claims, *i.e.* official capacity or municipal claims). For example:

- Regarding Plaintiff's Fourth Amendment strip search claim, the Screening Order (Dkt. #9) explained that Plaintiff failed to state a claim based on Ninth Circuit and Supreme Court precedent holding that strip searches are constitutionally permissible, even if they are not based on reasonable suspicion, when they are routinely conducted by prison or jail officials on detainees or arrestees as they enter the prison or jail. *Id.* at 5 (citing *Florence v. Bd. of Chosen*

*Freeholders*, --- U.S. ---, 132 S. Ct. 1510, 1523 (2012); *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 968–69 (9th Cir. 2010) (en banc)).  Yet, Plaintiff repeated the same allegations in the proposed amendment, which fail as a matter of law.  *Compare* Compl. (Dkt. #11) at Count VII *with* Proposed Am. Compl. at Count XXVI.

▪   Regarding Plaintiff's Eighth Amendment (excessive bail) claim, the Screening Order (Dkt. #9) explained that Plaintiff failed to state a claim because: (1) the LVMPD Officer did not set his bail; (2) Plaintiff has not alleged that his bail was enhanced for an improper purpose or that it was excessive in light of the reason it was set; and (3) Plaintiff provided no information about the criminal charges filed against him, his criminal history, if any, or any of the other relevant factors that were considered in setting his bail.  *Id.* at 11.  However, Plaintiff repeated the same conclusory allegation in the proposed amendment with no additional facts.  *Compare* Compl. (Dkt. #11) at Count III *with* Proposed Am. Compl. at Count XXII.

▪   Regarding Plaintiff's *Monell* claims against LVMPD, its officers, and former sheriff Doug Gillespie, the Screening Order (Dkt. #9) stated that Plaintiff had "not alleged that any particular statement, ordinance, regulation, decision, or custom exists that violates his constitutional rights or that Defendants' conduct was the result of a failure to train."  *Id.* at 7.  Here, Plaintiff's new allegations suffer from the same defect.[9]  Although Plaintiff alleges that local government officials violated his civil rights "by enforcing statutes and codes that are preempted by federal law," he fails to allege any particular statute or code.  Plaintiff also alleges that Officers Does 1–150, Firestine, and LaVassieur acted "upon policies, statutes, and/or codes

---

[9]   Plaintiff's new allegations name additional government officials: Defendants Clark County Commissioner, Steve Sisolak; former Clark County District Attorney, David Roger; current Clark County District Attorney, Steve Wolfson; and Deputy District Attorneys Jane/John Does 1–100.  *See* Proposed Am. Compl. at Count I–III, V.  In his Motion for Extension of Time to Accomplish Service (Dkt. #42), Plaintiff asserts that LVMPD is liable for the actions of its employees under NRS 41.30 and/or NRS 41.745; therefore, LVMPD should be brought into this case and the discovery process.  *Id.* at 2.  Contrary to Plaintiff's assertion, neither NRS 41.30 nor NRS 41.745 subject LVMPD liability for his § 1983 claims.  *See Monell*, 436 U.S. at 692–94 (liability against public officials cannot rest exclusively on theories of *respondeat superior* or vicarious liability).  As noted in the Screening Order, to bring a claim against municipal officers, Plaintiff is required to allege that the constitutional violations occurred as a result of an official policy or custom or through a failure to train municipal employees adequately. *Id.* at 690.  The proposed amendment does not contain sufficient factual matter to state a *Monell* claim against LVMPD or the newly named government officials.

1   promulgates by LVMPD and Clark County."  Proposed Am. Compl. at Counts XIV, XXVII.

2   These allegations are not entitled to a presumption of truth as they simply recite the elements of a

3   *Monell* claim.  *See Starr*, 652 F.3d at 1216.  Like the original Complaint, these bald allegations

4   do not contain sufficient underlying facts to give fair notice and to enable these parties to defend

5   themselves effectively.  *See, e.g.*, *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637

6   (9th Cir. 2012) (holding that post-*Iqbal* pleading standards apply to *Monell* claims).

7       ▪   Regarding Plaintiff's 42 U.S.C. § 1983 claim against private actors, Defendants Steven

8   Turner and Doe Security Guards #1 and #2, who are all employees of Rocky T's Security Inc.

9   (the "Rocky T's Security Defendants"), the Screening Order noted that Plaintiff's claim failed

10  because he did not allege that those individuals were acting under color of state law.  *Id.* at 12.

11  The proposed amendment does not remedy this defect.  Instead, it only alleges that LVMPD

12  Officers continued the false arrest by having him transported to the Clark County Detention

13  Center.  This conclusory allegation still fails to allege how the Rocky T's Security Defendants

14  meet one of the four tests described in the Screening Order (Dkt. #9) at 11–12 (citing *Florer v.*

15  *Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011)).  For the same reasons

16  stated in the Screening Order, Plaintiff has not alleged facts to show that the property claims

17  asserted against the Defendant Officers are part of the same case or controversy as those he

18  asserts against the Rocky T's Security Defendants.  Accordingly, the Court declines to exercise

19  supplemental jurisdiction over any state law claims Plaintiff may wish to allege against the

20  Rocky T's Security Defendants in the Proposed Amended Complaint.

21       Given Plaintiff's failure to cure the pleading deficiencies, the Court will recommend that

22  leave to amend these claims be denied as a futile attempt to reinstate claims that the Court

23  previously dismissed giving Plaintiff the opportunity to amend.  *See Ross*, 5 F.3d at 1088;

24  *Telesaurus*, 623 F.3d at 1003.

25          **3.      Repetition of Claims Against Doe Defendants**

26       Despite having filed his original Complaint over 15 months ago and engaging in written

27  discovery since early March, Plaintiff's proposed amendment does not name the LVMPD

28  Officers, Sergeants, Clark County Deputy District Attorneys, or security guards who are

allegedly responsible for the wrongful actions.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citation omitted).  The Court is mindful that situations arise "where the identity of alleged defendants will not be known prior to the filing of a complaint" and a "plaintiff should be given an opportunity through discovery to identify the unknown defendants."  *Id.*  However, plaintiffs must be diligent in attempting to ascertain the names of doe defendants.  *See id.* at 518 n.4.

Here, Plaintiff's doe allegations do not state plausible claims to warrant amendment.  *Iqbal*, 556 U.S. at 678 (noting that the Federal Rules of Civil Procedure do not require detailed factual allegations, but they demand "more than labels and conclusions").  For instance, in his Proposed Amended Complaint, Plaintiff alleges that Doe Police Officers 1–150 used unreasonable force by tackling him down two staircases when arresting him on October 14, 2012.  *See* Proposed Am. Compl. at Count XIV.  Even viewing this in a light most favorable to Plaintiff, the assertion that *150 police officers* simultaneously tackled him is implausible.  *See Twombly*, 550 U.S. at 570.  Plaintiff identifies "Doe Police Officers 1–150" as the wrongdoers in ten counts.  *See* Proposed Am. Compl. at Counts VIII–XIV, XVII–IXX.  Likewise, he names "Deputy District Attorneys Jane/John Does 1–100" in Count V, "Security Does 1–150" in Count XVIII, and LVMPD "Sgt. Does 1–150" in Count IXX.  This use of doe pleading amounts to fanciful and delusional factual scenarios that are not entitled to a presumption of truth.  *See Neitzke*, 490 U.S. at 327–28; *McKeever*, 932 F.2d at 798.  Accordingly, the Court will recommend denying leave to amend counts alleged against Doe Officers 1–150, Deputy District Attorneys Jane/John Does 1–100, Security Does 1–150, and Sgt. Does 1–150.

### 4.     Plaintiff's New Allegations and Claims

The Court will now review the new claims and allegations set forth in Plaintiff's proposed amendment.

#### 1.     § 1983 Claim – Substantive Due Process Violation Under the Fourteenth Amendment

To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law."  *West v. Atkins*, 487 U.S. 42, 48–49

- 12 -

1    (1988).  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a

2    method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266,

3    271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

4         A main theme of Plaintiff's claims, in the original Complaint and the proposed

5    amendment, is that Defendants wrongfully interfered with his right to sell and/or accept

6    donations for bottled water and other merchandise outside of the casinos on the Las Vegas Strip.

7    In other words, by enforcing certain statutes and codes that prohibit such activity, Defendants

8    violated his civil rights and deprived him of his economic liberty.  Plaintiff may be attempting to

9    state a claim under the Fourteenth Amendment's Due Process Clause.

10        The substantive component of the Fourteenth Amendment's Due Process Clause

11   prohibits the government from depriving a person of life, liberty, or property in a way that

12   "interferes with rights implicit in the concept of ordered liberty."  *Engquist v. Or. Dep't of

13   Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007) (citation omitted).  To succeed on a substantive due

14   process claim, a plaintiff must show a liberty or property interest protected by the Constitution.

15   *Id.*  "Individuals have a 'liberty interest in pursuing an occupation of [their] choice'."  *Waugh v.

16   Nev. State Bd. of Cosmetology*, 36 F. Supp. 3d 991, 1014 (D. Nev. 2014) (quoting *Engquist*, 478

17   F.3d at 997).  Whether a particular interference with a liberty interest is a due process violation

18   depends on whether the interference was "for purposes of oppression," rather than the purpose of

19   furthering legitimate state interests.  *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986).

20        To state a valid claim under the Fourteenth Amendment, a statute is only required to bear

21   a rational relationship to a legitimate state interest, unless it makes a suspect classification or

22   implicates a fundamental right."  *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of

23   Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000).  Suspect classifications whose use triggers a

24   strict scrutiny analysis include classifications based on race, nationality, and alienage.  *Benson v.

25   Ariz. State Bd. of Dental Examiners*, 673 F.2d 272, 278 n.15 (9th Cir. 1982).  Fundamental rights

26   include the right to marry, the right to live with family, the right to marital privacy, and the right

27   of parents to direct their children's upbringing and education.  *Cal. Bd. of Psychology*, 228 F.3d

28   at 1049; *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996) (fundamental rights protect

against state interference with personal decisions, which include those relating to marriage, family relationships, procreation, contraception, child rearing, and education).  Here, Plaintiff has not alleged that he is a member of a suspect class or indicated that his claims involve a fundamental right.  In addition, the courts have not recognized a right to sell and/or accept donations for merchandise as a fundamental right.  Thus, a rational basis review is appropriate.

Under rational basis review, economic regulations will pass constitutional muster so long as they are rationally related to a legitimate governmental purpose.  *See Merrifield v. Lockyer*, 547 F.3d 978, 984 n.9 (9th Cir. 2008) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).  "Only a handful of provisions have been invalidated for failing rational basis review." *Waugh*, 36 F. Supp. 3d at 1014 (noting the near impossibility of invalidating a statute under rational basis review) (citation omitted).  Because a statute is presumed constitutional, the burden is on the individual attacking the legislative structure to negate "every conceivable basis which might support it."  *Armour v. City of Indianapolis*, --- U.S. ---, 132 S. Ct. 2073, 2080–81 (2012) (citation omitted).

Plaintiff's proposed amendment fails to state a valid substantive due process claim upon which relief may be granted.  Although Plaintiff has a liberty interest in pursuing an occupation of his choice, this right is not without limits.  The Supreme Court has repeatedly recognized the government's countervailing interest in the public's "health, safety, morals, or general welfare." *See, e.g.*, *Village of Euclid v. Ambler Realty Co*., 272 U.S. 365, 395 (1926).  As the Court previously noted, Plaintiff does not allege which statutes or codes violated his rights or which federal laws preempt those statutes or codes.  He also fails to allege any reasons why the purportedly unconstitutional statutes or codes are not rationally related to a legitimate government purpose.  Thus, on its face, Plaintiff's substantive due process claim amounts to labels and legal conclusions, and the Court will recommend denying leave to amend.

### 2.    *§ 1983 Claim – False Arrest Under the Fourth Amendment*

Plaintiff's proposed amendment repeatedly alleges that Defendants placed him under a false arrest.  He may be attempting to state a claim under the Fourth Amendment for arrest without probable cause. *Beck v. Ohio*, 379 U.S. 89, 90–91 (1964).  As a general matter, an arrest

made without a warrant requires a showing of probable cause. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 2001).  An arrest made without probable cause or other justification provides the basis for a claim of unlawful arrest under § 1983 as a violation of the Fourth Amendment. *Dubner v. City of San Francisco*, 266 F.3d 959 (9th Cir. 2001).  A warrantless arrest is reasonable where the officer has probable cause to believe a crime has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Whether a police officer has probable cause to arrest is determined by looking at the facts known to the officer at the time of the arrest. *Turner v. County of Washoe*, 759 F. Supp. 630, 634 (D. Nev. 1991).  Probable cause exists if the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent officer in believing the person committed a crime.  *Id*.  The existence of probable cause precludes a claim of unlawful arrest. *Wyatt v. Cole*, 504 U.S. 158, 165 (1992); *Turner*, 759 F. Supp. at 633 (acknowledging the well- established principle that "a police officer who arrests with probable cause is immune from suit in a civil rights action").

Here, the majority of Plaintiff's proposed false arrest claims fail because he fails to allege that Defendants lacked probable cause to arrest him.  *See* Proposed Am. Compl. at Counts VI–XXV, XXVII–XXVIII.  Rather, he alleges that the LVMPD Officers were enforcing statutes and codes that prohibit his activity.  He contests the validity of unspecified statutes and codes, asserting that federal law preempts these unspecified regulations.  However, the face of the Proposed Amended Complaint indicates that Plaintiff was engaged in conduct that provided the LVMPD Officers with probable cause at the time of arrest.  Plaintiff alleges the LVMPD Officers knew of the statutes and codes at the time of the arrest *and* he maintains that he was engaged in activity prohibited by the relevant regulations.  As such, the majority of Plaintiff's false arrest claims fail as a matter of law.

1    In Count XXVI, however, Plaintiff alleges that Defendant Officers Firestine and

2  LeVasseur arrested him without probable cause on July 7, 2013, simply because he "was walking

3  with a water cooler and [was] known to sell water on the Las Vegas Strip."  He further alleges

4  that Firestine and LeVasseur wrongfully arrested him for violating a "stay out order" because the

5  order has expired.  *Id*.  The allegations in Count XXVI are sufficient to state a false arrest claim

6  for July 7, 2013.  However, the Court will recommend that leave to amend be denied for Counts

7  VI–XXV, XXVII–XXVIII.

8    ***3.     § 1983 Claim – Excessive Force Under the Fourth Amendment***

9    In Counts XIV, XVIII, and XXVII, Plaintiff alleges that LVMPD Officers and private

10 security guards used excessive force to arrest him in violation of the Fourth Amendment, which

11 guarantees a citizen's right to be free from "unreasonable searches and seizures."  U.S. Const.

12 Amend. IV.   Reasonableness is the foundation of Fourth Amendment jurisprudence.  *Florida v.*

13 *Jimeno*, 500 U.S. 248, 250 (1991).  The Fourth Amendment does not proscribe all state-initiated

14 searches and seizures; it merely proscribes those which are unreasonable.  *Illinois v. Rodriguez*,

15 497 U.S. 177, 187–88 (1990).

16   The Fourth Amendment's prohibition of excessive force is premised on the notion that

17 "bodily integrity [is] 'a cherished value in our society.' "   *United States v. Kriesel*, 508 F.3d 941,

18 948 (9th Cir. 2007) (quoting *Schmerber v. California*, 384 U.S. 757, 772 (1966)).  "The Fourth

19 Amendment requires police officers making an arrest to use only an amount of force that is

20 objectively reasonable in light of the circumstances" as perceived by a reasonable officer at the

21 scene. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v.*

22 *Garner*, 471 U.S. 1, 7–8 (1985)); *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921

23 (9th Cir. 2001) (claims against law enforcement officers for excessive force are analyzed under

24 the Fourth Amendment's "objective reasonableness" standard).  Courts determine whether the

25 use of force was objectively reasonable through "a careful balancing of the nature and quality of

26 the intrusion on the individual's Fourth Amendment interests against the countervailing

27 governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

28

In the Proposed Amended Complaint, Plaintiff alleges that, on July 27, 2013, Defendant Officers Firestine and LeVasseur used excessive force against Plaintiff by punching him numerous times, tackling him, and putting him in a chokehold.  *See* Proposed Am. Compl. at Count XXVII.  The Court finds that these allegations sufficient to state a § 1983 claim for excessive force as the proposed amendment provides sufficient allegations of underlying facts to give these Defendants fair notice and to enable them to fashion an effective defense.  *See Starr*, 652 F.3d at 1216.

However, based on the Court's previous analysis, Counts XIV and XVIII fail to state plausible claims.  In Count XIV, Plaintiff alleges that Doe Officers 1–150 used excessive force on October 14, 2012, used by tackling him down two staircases.  This Count fails as an implausible doe allegation.  In Count XVIII, Plaintiff alleges that on April 27, 2013, Rocky T's Security Defendants, which includes "Security Does 1–150," assaulted him by choking and handcuffing him, kicking him to the ground while still handcuffed, refusing to let him stand up, keeping him in 95 degree heat for over an hour, refusing to provide him with water, and ramming his head against the "Twin Peaks window."[10]  *Id*. at Count XVIII.  This Count also fails as an implausible doe allegation and lacks any allegations to support state action.  Accordingly, the Court will recommend leave to amend be granted for Plaintiff's excessive force claim against Defendant Officers Firestine and LaVassieur in Count XVII and denied for Counts XIV and XVIII.

### 4.   § 1983 Claim – Unreasonable Seizure of Property Under the Fourth Amendment

The Fourth Amendment protects against unreasonable seizures.  U.S. Const. Amend IV.  A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property.  *Lavan v. City of Los Angeles,* 693 F.3d 1022, 1027 (9th Cir. 2012) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  Generally, whether a seizure

---

[10]   These allegations are substantially the same as those in the original Complaint; although he now alleges that it was Security Does 1–150 who violated his civil rights and federal and state law with this conduct.  *Compare* Proposed Am. Compl. at Count XVIII *with* Compl. (Dkt. #11) at Count XI.  The original Complaint alleged a violation of 18 U.S.C. § 1951 for that particular date and conduct.

is unreasonable under the Fourth Amendment depends upon the facts and circumstances of each case. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (citing *Cooper v. California*, 386 U.S. 58, 59 (1967)). A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment, subject only to a few specific and well-defined exceptions. *See Miranda*, 429 F.3d at 862 (citation omitted); *Menotti v. City of Seattle*, 409 F.3d 1113, 1154 (9th Cir. 2005) (citing *Illinois v. McArthur*, 531 U.S. 326, 330–31 (2001)). The Fourth Amendment protects property as well as privacy against unreasonable seizures. *Sodal v. Cook Cnty.*, 506 U.S. 56, 63–64, n.8 (1992).

In the proposed amendment, Plaintiff alleges that LVMPD Officers intentionally and unreasonably seized his personal property and money without his consent and under color of official right. *See* Proposed Am. Compl. at Counts XV–XVI, XX–XXVIII. He alleges that the officers seized money and bottled water as wells as coolers and dollies to transport the water. *Id*. For the reasons stated above, the proposed amendments against "Officers Does 1–150" fail to state a valid claim. However, Plaintiff has stated a claim under the Fourth Amendment for an unreasonable seizure of personal property against Defendant Officers Clark, Firestine, LaVassieur, Fincher, Le Heay, Kompman, and Johnson. *Id*. The Court will therefore recommend granting Plaintiff leave to amend for Counts XV, XVI, and XX through XXVIII.

### 5.   *Violation of the Nevada Constitution and Criminal Statutes*

As previously noted, § 1983 is merely the mechanism for private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 does not provide a cause of action for violations of state law. *See e.g.*, *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) *but see Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) (§ 1983 does provide a cause of action where a violation of state law would also be a violation of a constitutional right).

Throughout the proposed amendment, Plaintiff alleges violations of multiple Nevada criminal statutes NRS 200.310 (kidnapping), NRS 200.380 (robbery), NRS 200.400 (battery with intent to commit a crime); NRS 200.460 (false imprisonment); NRS 207.295 (commercial bribery). *See* Proposed Am. Compl. Section 1983 does not provide a cause of action for

1    Plaintiff's claims under Nevada criminal statutes since these are state laws, not federal.

2    Furthermore, criminal offenses generally do not create a civil cause of action.  *See e.g.*, *Jordan v.*

3    *State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 69, 110 P.3d 30, 48 (2005)

4    (finding that NRS 197.200, which makes it a criminal offense for "an officer to unlawfully and

5    maliciously, under pretense or color of official authority, commit oppression by arresting or

6    detaining another against his will," does not create a civil cause of action), *abrogated on other*

7    *grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008); *Dyson*

8    *v. Utigard*, 163 F.3d 607, 607 (9th Cir. 1998) (criminal offenses under Title 18 of the U.S. Code

9    do not create a private right of action).

10       Plaintiff also alleges violations of the Nevada Constitution, Art. I, § 1 (recognizing

11   "inalienable rights" including "enjoying and defending life and liberty; Acquiring, Possessing

12   and Protecting property and pursuing and obtaining safety and happiness").  *See* Proposed Am.

13   Compl.   These purported violations are stated in a conclusory fashion and do not contain

14   sufficient allegations of underlying facts to give Defendants fair notice or enable them to defend

15   themselves effectively.   To the extent that a violation of this provision would also violate

16   Plaintiff's constitutional rights or liberty interests, the Court has addressed his allegations in its

17   preceding analysis of Plaintiff's substantive due process rights under the Fourteenth Amendment.

18              ***6.      § 1983 Claim – Violation of the Privileges or Immunities Clause***

19       Plaintiff's proposed claim under the Privileges or Immunities Clause fails to state a claim

20   upon which relief may be granted.   Federal district courts are constrained by the Supreme

21   Court's interpretation of the Privileges or Immunities Clause in the *Slaughter–House Cases*, 83

22   U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872)*.   See Waugh v. Nev. State Bd. of Cosmetology*, 36 F.

23   Supp. 3d 991, 1025 (D. Nev. 2014).   Plaintiffs cannot receive relief based upon the Privileges or

24   Immunities Clause "unless the claim depends on the right to travel."   *Merrifield v. Lockyer*, 547

25   F.3d 978, 984 (9th Cir. 2008) (citing *Slaughter–House Cases*, 83 U.S. (16 Wall.) at 77).   Here,

26   the proposed amendment does not allege that Plaintiff's right to travel was somehow violated.

27   As such, Plaintiff has not stated a viable claim under the Privileges or Immunities Clause.

28

1

### 7.    § 1985(3) Conspiracy Claim

Section 1985(3) prohibits conspiracies with a "purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  *See* 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).  In order to state a claim under 42 U.S.C. § 1985, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby the plaintiff was deprived of any right or privilege of a United States citizen; and (5) the plaintiff suffered injury to him or his property.  *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *see also United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983).  When a plaintiff fails to sufficiently allege that defendants intentionally discriminated against them based upon racial or otherwise class-based, invidiously discriminatory animus, his complaint fails to state a claim under § 1985(3) and is, therefore, properly dismissed under Rule 12(b)(6).  *Holgate*, 425 F.3d at 676; *see also Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985) (rejecting a § 1985(3) claim alleging plaintiff was a member of a protected class of military prisoners).

Regarding the second element, a plaintiff must not only identify a legally protected right, but also "demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'." *Sever*, 978 F.2d at 1536 (quoting *Griffin*, 403 U.S. at 102).  The Ninth Circuit requires a showing either that the courts have designated the class in question a suspect or quasi-suspect classification or that Congressional legislation has established that the class required special protection.  *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985).  Notably, the Supreme Court has expressly instructed that "actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3)." *Scott*, 463 U.S. at 839; *see also Holgate*, 425 F.3d at 676 (rejecting § 1985 claim when plaintiffs alleged they were members of the protected class of "consumers looking to build their dream home").

Here, Plaintiff's § 1985 claim fails because he has not alleged sufficient facts to support class-based discrimination. Plaintiff's proposed amendment does not expressly allege he is a member of a protected class, although he may be attempting to identify a class of individuals that sell and/or accept donations for merchandise as the protected class.[11] However, his allegations do not fall within a class designated by the courts or Congress. Additionally, the proposed amendment undeniably rests on "economic motivations" since Plaintiff avers that Defendants aided and abetted Las Vegas casinos in obtaining a monopoly over the sale of bottled water and other merchandise. Therefore, the weight of authority precludes this claim, and the Court will recommend that leave to amend be denied for Plaintiff's proposed § 1985(3) claim.

### 8.    *Violation of the Racketeer Influenced and Corrupt Organizations Act*

As the Court explained in the Screening Order (Dkt. #9), the Ninth Circuit has repeatedly held that there is no private right of action under Title 18 of the United States Code. *See, e.g.*, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (no basis for civil liability under Title 18). Plaintiff's claims under 18 U.S.C. § 1951 were therefore dismissed for a failure to state a claim. In Plaintiff's proposed amendment, he repeats the allegation that Defendants violated 18 U.S.C. § 1951 (interference with commerce by threats or violence) as well as 18 U.S.C. § 201 (bribery of public officials and witnesses) but relies upon the private right of action set forth in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*., as the basis of his claim. The predicate offense for a civil claim under RICO is a violation of § 1962(c), which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

RICO authorizes a private right of action by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). RICO provides civil

---

[11] *See, e.g.*, Proposed Am. Compl. at Counts I–II (alleging that Defendants' conspiracy to interfere with commerce deprived Plaintiff of equal protection under the law as well as "other citizens who engage in similar activity"—*i.e.* "citizens who sell bottled water and other merchandise on the Las Vegas Strip"); *see also* Counts III, V.

remedies to redress violations of a wide range of federal criminal offenses or "racketeering activity," including § 1951 and § 201.  *See* 18 U.S.C. § 1961 (defining offenses).  In order to state a civil RICO claim under § 1964(c), a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property."  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

Even though Plaintiff's proposed amendment now alleges a RICO violation as a basis for Defendants' civil liability, his allegations still fail to state a claim as a matter of law for several reasons.  First, because RICO claims involve underlying fraudulent acts, they are subject to Rule 9(b)'s heightened pleading standard.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In order to sufficiently plead a RICO claim, a plaintiff must specify the time, place, and content of the alleged underlying fraudulent acts, as well as the parties involved and their individual participation.  *Edwards*, 356 F.3d at 1066; *accord United States v. Freeman*, 6 F.3d 586, 594 (9th Cir. 1993) (to allege a violation of 18 U.S.C. § 1951 as a "racketeering activity" under RICO, a plaintiff is required to show "specific conduct by the defendant" demonstrating a corrupt intent).  Here, Plaintiff's proposed amendment does not state his RICO claims with the requisite particularity because it fails to identify the time, place, or manner of each violation or the role of each Defendant in the scheme.  *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  This deficiency alone precludes Plaintiff's RICO claim, but this is not the only shortcoming.

As local government officials, Defendants could not violate the federal bribery statute.  18 U.S.C. § 201 can only be violated by an individual who is an officer of the United States or who is acting for or on behalf of the United States in any official capacity.  18 U.S.C. § 201(a)(1) (defining the term "public official"); *see also United States v. Canella*, 63 F. Supp. 377 (S.D. Cal. 1945).  Persons acting on behalf of a state or municipal government are not persons "acting for or on behalf of the United States" for the purposes of 18 U.S.C. § 201.  *See, e.g.*, *United States v. Hoskins*, 520 F. Supp. 410, 414 (N.D. Ill. 1981).  Plaintiff alleges that Defendants are officers or officials acting for or on behalf of Clark County—not the United States.  Thus,

1   Defendants are not "public officials" within the meaning of 18 U.S.C. § 201.  Accordingly,

2   Plaintiff's proposed amendment fails to state a valid RICO claim.

3           **9.      Anti-Trust Violations Under the Sherman Act, 15 U.S.C. §§ 1–2**

4           Plaintiff's proposed amendment alleges that Defendants violated two sections of the

5   Sherman Act, 15 U.S.C. §§ 1–2, which seeks to prevent anticompetitive practices in commerce.

6   Section 1 of the Sherman Act prohibits agreements or conspiracies that unreasonably restrain

7   trade. 15 U.S.C. § 1.  *See also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998).  To

8   successfully allege a violation of Section 1, "a plaintiff must allege sufficient facts to

9   demonstrate three elements: (1) the existence of a contract, combination, or conspiracy among

10  two or more separate entities that (2) unreasonably restrains (3) interstate trade or commerce."

11  *Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.*, 217 F.3d 1187, 1189–90 (9th

12  Cir. 2000) (citation omitted).  Section 2 of the Sherman Act prohibits the monopolization of "any

13  part of the trade or commerce."  15 U.S.C. § 2.  To state a plausible monopolization claim under

14  Section 2 of the Sherman Act, a plaintiff must show: "(a) the possession of monopoly power in

15  the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal

16  antitrust injury."  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted).  A

17  private right of action to enforce the Sherman Act is set forth in Section 4 of the Clayton Act, 15

18  U.S.C. § 15(a), which provides that "any person who shall be injured in his business or property

19  by reason of anything forbidden in the antitrust laws may sue therefor."  *See also Knevelbaard*

20  *Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000).

21          Local government entities and officials are generally immune from money damages

22  under the Sherman Act.  The Local Government Antitrust Act ("LGAA"), 15 U.S.C. §§ 34–36,

23  provides immunity to any local government, official, or employee acting in an official capacity

24  from money damages, costs, or attorney fees in a suit under Section 4, 4A, or 4C of the Clayton

25  Act, 15 U.S.C. §§ 15, 15a, 15c.[12]  For purposes of the LGAA, a local government is "a city,

26

27  [12]  Specifically, 15 U.S.C. § 35 states that "[n]o damages, interest on damages, costs, or attorney's fees
    may be recovered under section 4, 4A, or 4C of the Clayton Act … from any local government, or official
28  or employee thereof acting in an official capacity."

county, parish, town ... or any other general function governmental unit established by State law." 15 U.S.C. § 34(1). Furthermore, the "official capacity" provision of the LGAA shields local government officials from liability to the same extent as the local government itself. *See, e.g.*, *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 848–49 (6th Cir. 2012); *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 885 (10th Cir. 2005); *Sandcrest Outpatient Serv. v. Cumberland Cnty. Hosp.*, 853 F.2d 1139, 1145 n.7 (4th Cir. 1988).

To state an antitrust claim against a local government or its officials, a plaintiff must show that the entity or its officials were not acting in their official capacity. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1527 (9th Cir. 1990) (citing 15 U.S.C. §§ 35(a) & 36(a)). The LGAA's legislative history demonstrates that Congress intended the phrase "acting in an official capacity" to be given broad meaning encompassing all "lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position." *GF Gaming Corp.*, 405 F.3d at 885. The LGAA does not consider a defendant's motives in carrying out his duties. *Id.* (citing *Sandcrest*, 853 F.2d at 1145–46; *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1477 (10th Cir. 1990)) (concluding that allegations of an improper motive, conspiracy, conduct in bad faith or with malice is irrelevant to determining the application of LGAA immunity).

Here, Plaintiff's proposed amendment fails because he does not allege that Defendants acted outside of their official capacity with respect to their acts restricting his commercial activity. For example, Plaintiff avers that Defendants tried to aid casinos in monopolizing the sale of water bottles on the Strip by enforcing or acting upon "policies, statutes, ordinances, codes, customs, practices and procedures enacted, enacted, promulgated or employed" by Defendants. *See, e.g.*, Proposed Am. Compl. at Counts IV–V. Plaintiff further alleges that Defendants acted "under the color of official right". These allegations are repeated in each Count and do not assert that Defendants were acting outside their official capacity; rather, Plaintiff expressly alleges that Defendants *were acting within the scope* of their official duties, responsibilities, and objectives.

Additionally, Nevada case law and statutes show that Clark County had valid authority to enact and enforce the measures Plaintiff now challenges.   Under controlling Nevada law, a county is a mere "creature of the legislature."  *Pershing Cnty. v. Humboldt Cnty.*, 43 Nev. 78, 84 (1919).  A county may only act when given the power to do so by the state legislature.  *Id*.  NRS Chapter 244 includes multiple provisions authorizing Nevada's counties to license and regulate certain activities within its boundaries.[13]   Thus, the state legislature has conferred extensive regulatory and taxation power to the counties.  *See, e.g*., NRS 244.335 (county business licensing in unincorporated areas), NRS 244.345 (county gaming licensing in unincorporated areas), NRS 244.350 (county liquor regulation), NRS 463.180 (county gaming licenses); *Clark Cnty. v. City of Los Angeles*, 80 Nev. 120, 390 P.2d 38 (1964) (recognizing that state legislature granted to counties regulatory power and licensing power for purposes of raising revenue).

According to the Proposed Amended Complaint, Defendants are each officials or employees of local governments acting in an official capacity within the meaning of the LGAA. Plaintiff alleges that Defendants were acting within the scope of their state-sanctioned duties by regulating and/or enforcing regulations on business within Clark County.  The LGAA therefore precludes Plaintiff from seeking money damages for violations of the Sherman Act.[14]  Thus, the proposed amendment fails to state a valid claim under the Sherman Act.

---

[13]  For example, a board of county commissioners may:

> (a) … regulate all character of lawful trades, callings, industries, occupations, professions and business conducted in its county outside of the limits of incorporated cities and towns.
> (b) … impose and collect a license tax for revenue or for regulation, or for both revenue and regulation, on such trades, callings, industries, occupations, professions and business….

NRS 244.335(1).  *See also Nev. Rest. Servs., Inc. v. Clark Cnty.*, 981 F. Supp. 2d 947, 965–66 (D. Nev. 2013) (finding that ordinance was rationally related to legitimate government purpose of preserving jobs and preventing restricted licensees from unfairly competing with unrestricted licensees; County acted within its scope of authority because it has wide discretion to determine which means to employ to meet these objectives).

[14]  To the extent Plaintiff alleges Sherman Act violations against the Rocky T's Security Defendants, who are not covered by the LGAA, the proposed amendment does not allege sufficient facts to state a plausible claim.  *See* Proposed Am. Compl. at Count XVIII.  Rule 8 requires "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.  Plaintiff's use of antitrust "buzz words" does not supply factual circumstances necessary to support his conclusory and insufficient allegations.

In summary, for the reasons stated above, most of Plaintiff's allegations fail to state a valid claim either because the claims are time-barred, repeated allegations that fail as a matter of law, lack sufficient factual allegations to state plausible claims, or failed to allege facts showing that supplemental jurisdiction is proper.  Therefore, the Court will recommend that leave to amend be granted only as to Plaintiff's claims under the Fourth Amendment for: (1) use of excessive force against Defendant Officers Firestine and LaVassieur, and (2) unreasonable seizure of property against Defendant Officers Clark, Firestine, LaVassieur, Fincher, Le Heay, Kompman, and Johnson.  Denial will be recommended for all remaining claims and Defendants.

### III.    PLAINTIFF'S REQUESTS TO ADD LVMPD AND NUMEROUS OFFICERS AS PARTIES

On April 2, 2015, Plaintiff has asked the Court to add the LVMPD as a party to this action.  *See* Mot. to Add Party: LVMPD (Dkt. #50).  Weeks later, Plaintiff filed a Motion to Amend/Correct Complaint and Add/Join Parties (Dkt. #51) on April 30, 2015, which attached the Proposed Amended Complaint seeking to add or join a total of 25 defendants, including LVMPD.[15]  For the reasons stated in the analysis of the proposed amendment, Plaintiff fails to state valid claims against all but seven proposed Defendants: (1) Firestine, (2) LaVassieur, (3) Fincher, (4) Le Heay, (5) Kompman, (6) Johnson, and (7) Clark.[16]  Accordingly, the Court will recommend that Plaintiff's requests to add parties to this action be granted only as to Defendant Officer Clark.

### IV.    PLAINTIFF'S MOTION TO EXTEND TIME TO ACCOMPLISH SERVICE (DKT. #42)

Plaintiff has also requested additional time to serve LVMPD and its officers.  Mot. for Ext. of Time to Accomplish Service (Dkt. #42), filed April 2, 2015.  Because Plaintiff has not stated a valid claim against LVMPD, either in the original Complaint or in the proposed

---

[15]   The 25 proposed defendants are: (1) Clark County; (2) LVMPD; (3) Clark County District Attorney's Office; (4) Rocky T's Security Inc.; (5) Bien; (6) Bill; (7) Burns; (8) Brighandi; (9) Fincher; (10) Firestine; (11) Garrison; (12) Johnson; (13) Julo; (14) Kompman; (15) Le Heay; (16) LaVassieur; (17) Loving; (18) Frailey; (19) Doug Gillespie; (20) Pettie; (21) David Roger; (22) Steve Sisolak; (23) Sgt. Stoll; (24) Stephen Turner, (25) Steve Wolfson, and Jane/John Does 1–150.

[16] With the exception of Defendant Officer Clark, the remaining six of these LVMPD Officers had valid claims stated against them in the original Complaint (Dkt. #11) under the Fourth Amendment for an unreasonable seizure of personal property.  Thus, Defendant Officer Clark is the only "new" Defendant named in the Proposed Amended Complaint.

amendment, the motion is denied as to LVMPD and the officers for whom the Court has found Plaintiff has not stated a claim.   However, service must still be accomplished for several Defendant Officers.

On January 5, 2015, the Court issued an Order (Dkt. #10) directing the Clerk of the Court to file the original Complaint and issue summons and instructing Plaintiff to provide the U.S. Marshals Service ("USM") with the information to serve Defendants.  On February 18, 2015, the summons were returned executed for Defendants Firestine and LaVassieur, (Dkt. ##17, 18), but not for Defendants Kompman, Le Heay, Fincher, or Johnson.   LVMPD represented that there was no match for Le Heay and Kompman in LVMPD's database.  *See* USM Returns (Dkt. ## 21, 22).  The Summons was returned unexecuted for Johnson because there are over 40 "Johnsons" who work at LVMPD, USM Return (Dkt. #19), and for Fincher because 3 "Finchers" work at LVMPD, USM Return (Dkt. #20).

Rule 4(m) of the Federal Rules of Civil Procedure states a defendant must be served within 120 days after a complaint is filed.  *Id.*  The rule also provides that a court must extend the time for service for an appropriate period if a plaintiff shows good cause for his failure to timely serve the complaint.  *Id.*  As a general matter, a showing of good cause requires more than simple inadvertence, mistake of counsel, or ignorance of the procedural rules.   *Martin v. Longbeach*, 246 F .3d 674 (9th Cir. 2000).   "At a minimum, good cause means excusable neglect." *Id.*

Plaintiff was required to provide the USM with information to serve the Complaint on Defendant Officers Kompman, Le Heay, Fincher, and Johnson.  He did so, but the information he provided the USM was insufficient to effectuate service.  *See* Mot. for Ext. of Time to Accomplish Service (Dkt. #42) at 2.  Plaintiff suspects that some of these Defendant Officers may no longer work for LVMPD.  Given the multiple LVMPD employees with the last names "Johnson" and "Fincher" and his belief that LVMPD is liable for the actions of its employees, Plaintiff argues that LVMPD should be named in this case and brought in to the discovery process.

Plaintiff cannot sue a party simply to participate in discovery or because LVMPD employs or previously employed the Defendant Officers.  As previously explained, LVMPD is not liable for the acts of its employees based on theories of *respondeat superior* or vicarious liability.  LVMPD can only be named if a Plaintiff pleads a valid *Monell* claim.  *See*, *supra*, n.9. Plaintiff has not stated such a claim.

The Rules of Civil Procedure provide the means for Plaintiff to obtain discovery of the identity of the officers he is trying to sue and serve.  For example, Plaintiff may serve a subpoena on a third-party *at his own expense* to obtain documents relevant to his case.  *See* Fed. R. Civ. P. 45.  Plaintiff may also serve written discovery requests on Defendant Officers Firestine and LaVassieur to obtain relevant discovery materials.  In short, it is Plaintiff's responsibility to conduct discovery during discovery in order to provide the USM with enough information to serve the Complaint on the remaining unserved defendants.  Plaintiff should carefully review the discovery rules contained in Rules 26–36 of the Federal Rules of Civil Procedure and the Local Rules of Practice to ensure that he follows the appropriate procedures.

The Court will grant the Motion for Extension of Time to Accomplish Service as to Defendant Officers Kompman, Le Heay, Fincher, and Johnson and deny it as to LVMPD.

**IT IS ORDERED:**

1. Plaintiff James Williams' Motion for Leave to File Amended Complaint (Dkt. #31) is **DENIED** as duplicative.

2. Plaintiff's Motion to Extend Time re: Service (Dkt. #42) is:

    a. **GRANTED** as to Defendant Officers Kompman, Le Heay, Fincher, and Johnson; and

    b. **DENIED** as to LVMPD.

3. The deadlines stated in the Order (Dkt. #53) are extended by 60 days to enable the Plaintiff to obtain discovery of the identities of the unserved Defendants: (i) discovery in this action shall be completed on or before September 18, 2015; (ii) motions for summary judgment shall be filed and served no later than October 19, 2015; and (iii) the parties shall file a Joint Pretrial Order on or before November 17, 2015.

4. Any additional requests for extensions shall fully comply with the Federal Rules of Civil Procedure and Local Rules of Practice, and absent a strong showing of good cause and compelling circumstances, no further extensions will be allowed.

5. Plaintiff shall provide the USM with additional information to allow the USM to attempt to reserve the summons and Complaint on Defendant Officers Kompman, Le Heay, Fincher, and Johnson.  In accordance with Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished on all Defendants within 90 days from the date of this order, or by **October 13, 2015.**

6. If the USM is unable to serve one or more of the Defendant Officers, and Plaintiff wishes to have service attempted again, a motion must be filed with the Court specifying a more detailed name and/or address for said defendant(s), or whether some other manner of service should be attempted.

**IT IS RECOMMENDED:**

1. Plaintiff's Motion to Add Party: LVMPD (Dkt. #50) be **DENIED**.

2. Plaintiff's Motion to Amend/Correct Complaint and Add/Join Parties (Dkt. #51) be:

    a. **DENIED** as to Plaintiff's allegations and claims against: Clark County; LVMPD; Clark County District Attorney's Office; Rocky T's Security Inc.; Bien; Bill; Burns; Brighandi; Fincher; Garrison; Johnson; Julo; Kompman; Le Heay; Loving; Frailey; Doug Gillespie; Pettie; David Roger; Steve Sisolak; Sgt. Stoll; Stephen Turner, and Steve Wolfson; and

    b. **GRANTED** as to Plaintiff's Fourth Amendment claims for: (i) use of excessive force against Defendant Officers Firestine and LaVassieur, and (ii) unreasonable seizure of property against Defendant Officers Clark, Firestine, LaVassieur, Fincher, Le Heay, Kompman, and Johnson.

Dated this 17th day of July, 2015.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with points and authorities in support of those objections, within fourteen days of the date of service of the findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.